**Electronically Filed
Intermediate Court of Appeals
29818
31-MAY-2011
08:30 AM**

NO. 29818


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


FRANK O. LOHER, Petitioner-Appellant, v.
STATE OF HAWAI'I, Respondent-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(SPECIAL PROCEEDINGS PRISONER NO. 05-1-0067;
CRIMINAL NO. 99-1621)


MEMORANDUM OPINION
(By:  Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendant-Appellant Frank O. Loher (**Loher**) appeals from the Findings of Fact, Conclusions of Law, and Order Denying Petition for Post-Conviction Relief (**Post-Conviction Order**) filed by the Circuit Court of the First Circuit (**Circuit Court**) on April 14, 2009.[1/]  The Post-Conviction Order followed an evidentiary hearing on remand from this court's opinion in Loher v. State, 118 Hawai'i 522, 193 P.3d 438 (App. 2008).  The Circuit Court denied Loher's petition for post-conviction relief under Hawai'i Rules of Penal Procedure (**HRPP**) Rule 40 (**Rule 40 Petition**).  On appeal, Loher contends that the Circuit Court erred in concluding that the failure of Loher's former appellate counsel to raise the "forced" testimony issue did not amount to ineffective assistance of counsel.  We affirm.

---

[1/]     The Honorable Richard K. Perkins presided.

I.    BACKGROUND

On August 19, 1999, a grand jury indicted Loher for (1) attempted sexual assault in the first degree in violation of Hawaii Revised Statutes (**HRS**) §§ 705-500 (1993) and 707-730(1)(a) (1993 & Supp. 2002); and (2) attempted kidnapping in violation of HRS §§ 705-500 and 707-720(1)(d) (1993).  Prior to trial, Loher filed a notice of alibi defense.  At a hearing on a motion in limine, Loher confirmed that he would rely on an alibi defense. Loher's counsel represented that Loher would testify, but at various times inserted a caveat "in case [Loher] chose not to testify."

The State filed a pretrial memorandum indicating that it expected the trial to last a total of five to six days.  The State's witness list identified fourteen potential witnesses.

A.    Trial

At a jury trial on November 14, 2000, the State presented the testimony of four witnesses:  the complaining witness (**Complainant**), the responding police officer, a Honolulu Police Department (**HPD**) detective, and an HPD fingerprint technician.

The Complainant testified that, in the early morning of July 29, 1999, she was walking alone down Kapiolani Boulevard toward downtown Honolulu.  Loher drove up in his car, a red, four-door Plymouth Neon, and offered her a ride.  Complainant got into the front passenger seat of the car.  She had never seen Loher before.

Loher drove onto the freeway, and Complainant fell asleep.  When she woke up, they were in a deserted industrial area.  Loher demanded oral sex and threatened that unless she complied, she would not be getting out of the car.  Complainant struggled to get out of the car as Loher ripped off her shirt and bra, scratching her back in the process.  She ran to a nearby pay phone and called 911.  While she was on the phone with the

dispatcher, Loher drove away.  Complainant noted Loher's license plate number and relayed it to the responding officer.  She described her assailant as a "local male" who was wearing an aqua-colored T-shirt and appeared to be "unshaven for a few days."  At the police station, Complainant identified Loher from a photographic lineup.  She also identified an aqua-colored T-shirt obtained during the investigation as the shirt Loher had been wearing.

The responding police officer testified that she received a call from dispatch to Kakoi Street, an industrial area near the airport, at about 3:52 a.m. on July 29, 1999.  When she arrived, Complainant flagged her down at the corner of Kakoi Street and Kilihau Street.  Complainant's top had been ripped.  The officer ran the license plate number provided by Complainant and confirmed that the vehicle belonged to Loher and his wife.

The investigating detective testified that he did not find any identifiable fingerprints or hair from Complainant in Loher's car.  An HPD fingerprint technician testified that a fingerprint taken from the passenger's side door of Loher's car did not match Complainant's.

The State rested its case at approximately 2:15 p.m. on the first day of trial.  Following a fifteen minute recess, the court reconvened outside the presence of the jury at 2:27 p.m.  Loher's counsel requested a continuance until the following morning because he did not anticipate that the State would finish so quickly and was unable to locate the defense witnesses.  The court noted that "there [was] more than enough time left in the day" and that Loher could testify at that time.  Loher's counsel objected.  He noted that depending on how the other witnesses testified, "there may not need to be a need for [Loher] to testify."  The court noted that Loher's counsel had previously represented that Loher would testify and concluded, "So we're going to proceed.  You may call your client to testify, or if you

wish, not to testify or engage in Tachibana at this time, and he may waive his testimony." After Loher's attorney consulted with him during a brief recess, he elected to testify.

Loher testified that at the time of the alleged offense, he was living in Victory Ohana, a halfway house in Kalihi. He had been married since February of 1999, but his wife, Andrea, lived separately with her son in Nuuanu. At around midnight on the night in question, Andrea called Loher from her job at Straub Clinic in downtown Honolulu. She was not feeling well and asked Loher to bring her some food. Loher got off work around 1:00 or 1:15 a.m., stopped at a fast food restaurant, and arrived at Straub Clinic at around 2:00 a.m. He spent about forty minutes with Andrea and left the clinic at about 2:40 a.m. He spent ten minutes driving back to Victory Ohana, arriving around 2:50 a.m. Loher then called Andrea at about 3:10 a.m. They talked for fifteen to twenty minutes until around 3:30 a.m, after which Loher went to sleep.

Andrea called Loher at around 4:00 a.m. to wake him up so that he could drive Andrea's son to work. Loher arrived at Andrea's house in Nuuanu at around 4:45 a.m. He made breakfast and left the house at about 5:30 a.m. He dropped off Andrea's son at Pearl Kai Shopping Center at around 6:00 a.m., then returned to Straub Clinic to pick up Andrea. Loher testified that he was wearing blue jeans and a black shirt that night, but admitted owning an aqua-colored shirt. He denied ever being on Kapiolani Boulevard that night.

On cross-examination, the State impeached Loher with a statement he had given to a detective on the afternoon of July 29, 1999. In his statement, he did not mention Andrea calling him several times at Victory Ohana. He told the detective he left Victory Ohana at 5:30 a.m. to pick up Andrea's son. He also told the detective that he was wearing a light green T-shirt on the night in question.

On the second day of trial, Andrea's son testified, as Loher's witness, that Loher arrived at the house in Nuuanu at about 4:45 a.m. on the morning of July 29, 1999. He was driving a red, four-door Neon sedan and was wearing a black shirt. Loher made breakfast and then drove him to Pearl Kai Shopping Center, where they arrived at about 6:00 a.m.

Andrea also testified. She stated that she called Loher from work at about midnight on the night in question and asked him to bring her some food. Loher arrived shortly before 2:00 a.m. He was clean shaven and wore jeans and a black shirt. Loher left at around 2:35 a.m. and called Andrea from Victory Ohana at about 3:15 a.m. They talked on the phone for fifteen to twenty minutes. Andrea called Loher again at around 4:00 a.m. to wake him up so that he could take her son to work.

On cross-examination, Andrea admitted that when the detective interviewed her on August 11, 1999, she told him that Loher had left Straub Clinic at about 2:20 a.m. She further admitted telling him that her telephone call with Loher had finished by 3:15 a.m. She also acknowledged that she never told the detective about calling Loher at 4:00 a.m. to wake him up. Finally, she acknowledged telling the detective that Loher had been wearing a green-colored shirt.

On November 17, 2000, the jury found Loher guilty of attempted sexual assault in the first degree. It found that count II, attempted kidnapping, had merged. Loher's trial counsel, Neal Kugiya (**Kugiya**), withdrew on February 21, 2001. On March 8, 2001, the court appointed Randal Shintani (**Shintani**) to represent Loher on appeal. Based on Loher's three prior sexual assault convictions involving similar circumstances, the Circuit Court sentenced him to an extended term of imprisonment with the possibility of parole, subject to a mandatory minimum term of thirteen years and four months to be served consecutively to his sentences on prior convictions.

5

B.    Direct Appeal

On direct appeal, Loher's appellate counsel did not raise the issue of Loher's allegedly forced testimony.  State v. Loher, No. 24489, at 11-15 (App. Apr. 21, 2003) (mem.).  This court affirmed the conviction on April 21, 2003, and the Hawaiʻi Supreme Court dismissed the application for writ of certiorari on June 16, 2003.  Id.

C.    The Rule 40 Petition

On October 18, 2005, Loher filed pro se the instant Rule 40 Petition.  Among other things, he argued that the Circuit Court forced him to testify.  The Circuit Court denied the petition without a hearing.  Loher appealed the denial in Appeal No. 27844.  See Loher, 118 Hawaiʻi 522, 193 P.3d 438.  This court construed the Rule 40 Petition to assert a claim that Loher's appellate counsel was ineffective in failing to raise the issue of Loher's "forced" testimony.  Id. at 532, 193 P.3d at 448.

In its opinion, this court referenced Brooks v. Tennessee, 406 U.S. 605 (1972) and State v. Kido, 102 Hawaiʻi 369, 76 P.3d 612 (App. 2003), cases in which the trial courts were found to have violated the defendants' constitutional rights by requiring them to testify, if at all, prior to other defense witnesses.  Loher, 118 Hawaiʻi at 532-33, 193 P.3d at 448-49. However, we concluded that the record was not sufficiently developed in this case.  Id. at 533, 193 P.3d at 449.  Loher's appellate counsel had not been granted an opportunity to be heard.  Id. at 534, 193 P.3d at 450. We therefore vacated in part and remanded the case to the Circuit Court for an evidentiary hearing on the ineffective assistance of counsel claim.  Id. at 539, 193 P.3d at 455.

D.    Further Circuit Court Proceedings

On remand, Loher testified that he did not want to testify at trial and he repeatedly told his trial counsel, Kugiya, as much.  He stated that he felt forced to testify when

the judge threatened to "end the trial right there on the spot." He claimed that Kugiya had never discussed the possibility of testifying until five minutes before Loher was forced to do so.

Kugiya testified that from the beginning of his representation, it appeared that Loher "always wanted to testify to give his side of the events." He had consulted with Loher "every step of the way" and had explained to Loher his right to remain silent. Loher appeared to understand his rights and wanted to testify at trial. Although Kugiya preferred Loher to testify last, he admitted that the altered order of testimony "[didn't] change things that much." He further stated that because the other two witnesses could not account for the time period crucial to the alleged offense, there were "a lot of things that needed to be explained" that only Loher could explain. Kugiya affirmed that Loher "was going to take the stand no matter what." Finally, Kugiya admitted that he had not arranged for the other witnesses to be present on the first day of trial because he had not expected the State's case to conclude so early.

Loher's counsel on direct appeal, Shintani, testified at the hearing on remand that he had not been aware of any relevant United States Supreme Court decisions on the "forced" testimony issue. Had he known of any such case, he would have raised the issue in Loher's appeal. In his Answering Brief filed in this appeal, Shintani states that, until the remand hearing, he was not informed of Loher's position that he did not want to testify at trial.

On April 14, 2009, the Circuit Court entered the Post-Conviction Order, denying Loher's Rule 40 Petition. The court specifically discredited Loher's testimony that he had planned to remain silent all along, that he did not want to testify, and that he only testified because he was "forced" to do so. The court found that Kugiya and Loher had discussed the likelihood of

him testifying many times before trial. Although Loher preferred to testify last, he "had decided to take the stand no matter what," and that decision had been made before the first day of trial. The court further found that Kugiya believed Loher's alibi defense would not succeed without Loher's testimony. Finally, it found that the defense witnesses were not available on the first day of trial because Kugiya had mistakenly assumed that the State's case would last longer. Kugiya failed to consult with the prosecutor to determine how many witnesses would be called or how long the State's case would take.

The Circuit Court concluded that "Loher's decision to testify 'congealed before the trial court's action.'" (Quoting Kido, 102 Hawaiʻi at 376, 76 P.3d at 619). Given Kugiya's failure to obtain an accurate estimate of when the State would complete its case, "Kugiya 'created the exigency for taking [Loher's] testimony first.'" (Quoting Kido, 102 Hawaiʻi at 376, 76 P.3d at 619). As a result, the Circuit Court concluded that there was no substantial impairment of a potentially meritorious assertion of a constitutional right, no appealable issue, and therefore no ineffective assistance of appellate counsel. Loher timely filed a timely notice of appeal.

II.  POINTS OF ERROR

Loher raises the following points of error on appeal:

(1) The Circuit Court erred in finding that Loher made the decision to testify before the first day of trial and that it "congealed" before the trial court's action;

(2) The Circuit Court erred in concluding that the delay was not "trifling";

(3) The Circuit Court erred in implicitly concluding that Kugiya's failure to accurately anticipate the conclusion of the State's case should be imputed to Loher; and

(4) The Circuit Court erred in concluding that there was no substantial impairment of a potentially meritorious

assertion of his constitutional right and therefore no appealable issue.[2/]

III. APPLICABLE STANDARDS OF REVIEW

The Hawai'i Supreme Court has established the following test for ineffective assistance of appellate counsel:  "(1) [the defendant's] appellate counsel omitted an appealable issue, and (2) in light of the entire record, the status of the law, and the space and time limitations inherent in the appellate process, a reasonably competent, informed and diligent criminal attorney would not have omitted that issue." Domingo v. State, 76 Hawai'i 237, 242, 873 P.2d 775, 780 (1994); see also Briones v. State, 74 Haw. 442, 465-67, 848 P.2d 966, 977-78 (1993).

A trial court's findings of fact are reviewed under the clearly erroneous standard of review. Dan v. State, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994),  "A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made." State v. Okumura, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (internal quotation marks and citation omitted).

When applying the "clearly erroneous" test, it must be remembered that

> [i]t is for the trial judge as fact-finder to assess the credibility of witnesses and to resolve all questions of fact; the judge may accept or reject any witness's testimony in whole or in part.  As the trier of fact, the judge may draw all reasonable and legitimate inferences and deductions from the evidence, and the findings of the trial court will not be disturbed unless clearly erroneous.  An appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of

---

[2/]      In conjunction with these points of error, Loher challenges findings of fact (**FOFs**) 11 and 13 (pertaining to Loher's decision to testify). He also challenges conclusions of law (**COLs**) 6 ("Loher's decision to testify 'congealed before the trial court's action'"); 7 (Kugiya's error created the exigency); 8 (the delay was not trifling); and 9 (no ineffective assistance of appellate counsel).

the evidence, because this is the province of the trial
judge.

State v. Eastman, 81 Hawai'i 131, 139, 913 P.2d 57, 65 (1996)
(citations omitted).

"An appellate court may freely review conclusions of
law and the applicable standard of review is the right/wrong
test. A conclusion of law that is supported by the trial court's
findings of fact and that reflects an application of the correct
rule of law will not be overturned." Dan, 76 Hawai'i at 428, 879
P.2d at 533 (internal quotation marks and citations omitted).

IV. DISCUSSION

The Sixth Amendment to the United States Constitution
and article I, section 14 of the Hawai'i Constitution guarantee
the right of the accused to effective assistance of counsel.[3]
Loher's core argument on appeal is that the Circuit Court erred
in concluding that there was no ineffective assistance of
appellate counsel. As noted above, where a defendant claims
ineffective assistance of appellate counsel, he must show that:
"(1) his appellate counsel omitted an appealable issue, and (2)
in light of the entire record, the status of the law, and the
space and time limitations inherent in the appellate process, a
reasonably competent, informed and diligent criminal attorney
would not have omitted that issue." Domingo, 76 Hawai'i at 242,
873 P.2d at 780.

An "appealable issue" is "an error or omission by
counsel, judge, or jury resulting in the withdrawal or
substantial impairment of a potentially meritorious defense."
Briones, 74 Haw. at 465-66, 848 P.2d at 977. A "potentially
meritorious defense" includes the assertion of a constitutional

---

[3] The Sixth Amendment provides, "In all criminal prosecutions, the
accused shall enjoy the right . . . to have the Assistance of Counsel for his
defence." U.S. Const. amend. VI. Likewise, article I, section 14 of the
Hawai'i Constitution provides, "In all criminal prosecutions, the accused
shall enjoy the right . . . to have the assistance of counsel for the
accused's defense."

right.  Id. at 462, 848 P.2d at 976.  If appellate counsel omitted an appealable issue, the reviewing court must examine the second prong in light of appellate counsel's knowledge of the record and law.  Id. at 466, 848 P.2d at 978.  So long as appellate counsel made an informed, tactical decision to omit an issue, that decision ordinarily will not be second-guessed.  Id. at 466-67, 848 P.2d at 976-78.

Here, Loher's appellate counsel did not make an informed decision in failing to raise the "forced" testimony issue.  His counsel admitted that he was unaware of any relevant U.S. Supreme Court decisions when he prepared Loher's direct appeal.  At issue is whether the Circuit Court erred in concluding that the "forced" testimony issue was not a potentially meritorious defense and therefore not an appealable issue under the first prong of the test.

The allegedly meritorious defense concerns the timing of Loher's testimony.  In Brooks v. Tennessee, Supreme Court confronted a similar restriction on a defendant's right to remain silent.[4]  406 U.S. at 606-07.  A Tennessee statute required criminal defendants to testify before all other defense witnesses or else waive their right to do so.  Id. at 606.  The policy underlying this mandate was to prevent defendants from shaping their own testimony to fit that of their witnesses.  Id. at 607.

The Supreme Court noted the weighty nature of a defendant's decision whether or not to testify.  Id. at 607-08. It is "an important tactical decision as well as a matter of constitutional right."  Id. at 612.  A defendant must be able to "intelligently weigh the advantages and disadvantages" of testifying.  Id. at 608 (citation omitted).  Because a defendant often may not know the value of his or her testimony at the close

_____

[4]    The accused in a criminal case enjoys both the right to remain silent and a corresponding right to testify.  Brooks, 406 U.S. at 609; Tachibana v. State, 79 Hawai'i 226, 236, 900 P.2d 1293, 1303 (1995).

11

of the state's case, he or she "might prefer to remain silent at that point, putting off his testimony until its value can be realistically assessed." Id. at 610.  In forcing the defendant to either testify first or remain silent, the statute infringed upon the accused's right to remain silent "by making its assertion costly."  Id. at 611 (citation omitted).

The Supreme Court in Brooks recognized that timing may be a crucial aspect of the defendant's right to remain silent. Id. at 608-12.  The court held that the Tennessee statute infringed upon a defendant's right of due process by restricting the defense's ability to make an important tactical decision, thereby depriving the accused of "the guiding hand of counsel at every step in the proceedings against him."  Id. at 612 (citation omitted).  It noted that "[w]hile nothing we say here otherwise curtails in any way the ordinary power of a trial judge to set the order of proof, the accused and his counsel may not be restricted in deciding whether, and when in the course of presenting his defense, the accused should take the stand."  Id. at 613.

As this court recognized in Loher's second appeal, courts have held that no Brooks error exists in the following situations:  "(1) where the trial court required that the defendant testify before only some of his witnesses; (2) where the defendant's decision whether to testify congealed before the trial court's action; and/or (3) where the defendant himself created the exigency for taking his testimony first."  Loher, 118 Hawai'i at 533 n.6, 193 P.3d at 449 n.6 (citing Kido, 102 Hawai'i at 376, 76 P.3d at 619).⁵/

---

5/      Some courts have adopted a narrow interpretation of Brooks and a corresponding emphasis on the discretion of trial courts to set the order of proof.  See United States v. Singh, 811 F.2d 758, 762-63 (2d Cir. 1987); Harris v. Barkley, 202 F.3d 169, 173-74 (2d Cir. 2000); Menendez v. Terhune, 422 F.3d 1012, 1031 (9th Cir. 2005) ("Apart from its limited holding, Brooks did not curtail in any way the ordinary power of a trial judge to set the order of proof.") (internal quotation marks and citation omitted); Juniel v.
(continued...)

This court has refined the application of <u>Brooks</u> in two prior cases. In <u>Kido</u>, the defendant sought to call another witness first. 102 Hawai'i at 372, 76 P.3d at 615. The witness was occupied in a different hearing elsewhere in the same building, and the court delayed the trial for forty-five minutes in order to locate the witness. <u>Id.</u> When the witness could not be found, the court required the defendant to testify first, if at all. <u>Id.</u> at 372-73, 76 P.3d at 615-16. In a motion for a new trial, defense counsel maintained that the witness's testimony could have impacted the defendant's decision to testify. <u>Id.</u> at 374, 76 P.3d at 617. Although defense counsel knew generally

---

<u>Felkner</u>, No. C 07-4542 RMW (PR), slip op. at 7 (N.D. Cal. May 11, 2010); <u>People v. Lancaster</u>, 158 P.3d 157, 194 (Cal. 2007); <u>People v. Walden</u>, 224 P.3d 369, 376 (Colo. Ct. App. 2009) ("The order of proof at trial is a matter within the trial court's sound discretion, and courts are given wide latitude in deciding these matters."); <u>Book v. State</u>, 880 N.E.2d 1240, 1248-50 (Ind. Ct. App. 2008); <u>People v. Smith</u>, 690 N.Y.S.2d 6, 7 (N.Y. App. Div. 1999). In <u>Harris</u>, for example, the court distinguished <u>Brooks</u> on the basis that it concerned a categorical rule rather than a "scheduling directive" rooted in the "trial court's broad power to cope with the complexities and contingencies of trial." 202 F.3d at 174 (internal quotation marks and citation omitted). Likewise, in <u>Singh</u>, the court recognized in dicta that "[t]he trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process. To this end, he [or she] may determine generally the order in which parties will adduce proof." 811 F.2d at 763 (quoting <u>Geders v. United States</u>, 425 U.S. 80, 86 (1976)). Courts employing this approach have generally held that a trial court may require the defendant to testify, if at all, while awaiting the arrival of other defense witnesses. <u>See</u> <u>Walden</u>, 224 P.3d at 375-76 (recognizing this as a separate category of cases finding no <u>Brooks</u> error); <u>Juniel</u>, No. C 07-4542 RMW (PR), slip op. at 5-7; <u>Lancaster</u>, 158 P.3d at 194; <u>Soto v. State</u>, 751 So.2d 633, 639 (Fla. Ct. App. 1999); <u>Book</u>, 880 N.E.2d at 1243-50; <u>State v. Amos</u>, 262 N.W.2d 435, 437 (Minn. 1978); <u>Smith</u>, 690 N.Y.S.2d at 7.

Other courts have adopted a somewhat broader view of <u>Brooks</u>, generally in dicta. <u>See, e.g.</u>, <u>United States v. Rantz</u>, 862 F.2d 808, 812 (10th Cir. 1988); <u>People v. Buckley</u>, 378 N.W.2d 432, 448 (Mich. 1985). In <u>Buckley</u>, for example, the Michigan Supreme Court cited <u>Brooks</u> for the proposition that "[a] defendant has a constitutional right to decide if, <em>and when</em>, he will take the stand." 378 N.W.2d at 448 (emphasis added) (dictum). It further noted in dicta that an accused has the right to hear all of his or her own witnesses before deciding whether to testify. <u>Id.</u> In <u>Rantz</u>, the Tenth Circuit noted that the defendant's decision regarding when to testify is "an important tactical decision as well as a constitutional right." 862 F.2d at 812 (holding that constitutional error was harmless because defendant had previously decided to testify no matter what).

what the witness would say, he could not predict all of the details. Id.

The court in Kido specifically noted that none of the three generally-recognized exceptions to Brooks applied. Id. at 376-77, 76 P.3d at 619-20. There was no indication that the defendant had decided to testify regardless of what the witness said. Id. at 377, 76 P.3d at 620. Nor was there any indication that the defendant himself created the exigency; the delay arose from the witness's involvement in a separate court proceeding. Id. Finally, as the witness was in the same courthouse, the delay and inconvenience in waiting for him "would have been trifling indeed." Id. The court held that the "choice foisted upon [the defendant] was effectively the same choice the Tennessee statute forced upon Brooks" and was an error of "constitutional dimension." Id. at 376, 378, 76 P.3d at 619, 621. However, it cautioned that its holding did not "otherwise curtail[] in any way the ordinary power of a trial judge to set the order of proof." Id. at 378, 76 P.3d at 621 (quoting Brooks, 406 U.S. at 613).

In State v. Sale, 110 Hawai'i 386, 133 P.3d 815 (App. 2006), this court distinguished Kido to hold that no Brooks error occurred. There, the defense witness who planned to testify first failed to appear. Id. at 390, 133 P.3d at 819. The defendant noted his "preference" not to testify first, but nonetheless testified. Id. at 391, 133 P.3d at 820. The witness did not end up testifying, and the defense did not present any other witnesses. Id. at 392, 133 P.3d at 821. This court noted that unlike in Kido, the defendant in Sale had already stated his decision to testify on the record before the circuit court required him to either take the stand or rest his case. Id. at 397, 133 P.3d at 826. The court's ruling thus did not influence the defendant's decision whether or not to testify. Id. Moreover, because the defendant turned out to be the defense's

only witness, there was "no reasonable possibility that any error . . . might have contributed to Sale's conviction." Id. at 397-98, 133 P.3d at 826-27. Finally, the court noted that Kido was further distinguishable because of the length of delay. Id. at 397 n.14, 133 P.3d at 826 n.14. The witness's whereabouts were unknown and "[t]o accommodate [the defendant], the circuit court would have had to suspend the entire afternoon session of a short trial with no guarantee that [the witness's] presence could be secured." Id.

Here, the Circuit Court expressly found that Loher's decision to testify congealed before the court's mandate. Loher asserts that Sale is distinguishable, as there the defendant's decision was noted contemporaneously on the record. However, Sale and Kido require only that the defendant's decision "congealed before the trial court's action," not that it be noted contemporaneously on the record. Kido, 102 Hawai'i at 376, 76 P.3d at 619; Sale, 110 Hawai'i at 397, 133 P.3d at 826. The crux of the issue concerns whether the defendant's decision to testify or remain silent was in any way occasioned or "coerced" by the trial court's ruling. Kido, 102 Hawai'i at 376, 76 P.3d at 619. If the defendant had already decided to testify, the trial court's ruling could not have coerced the decision, regardless of whether or not the decision was noted in the lower court record.[6]

---

[6] A number of courts have similarly held that no Brooks violation occurs where the defendant made the decision before the trial court's ruling. See United States v. Leon, 679 F.2d 534, 538 (5th Cir. 1982) (noting that court's actions did not influence defendant's decision to testify); Rantz, 862 F.2d at 813; Johnson v. Evans, No. CIV S-05-1223, 2009 WL 5030661, at *14-15 (E.D. Cal. Dec. 16, 2009); Walden, 224 P.3d at 375-77; State v. Turner, 751 A.2d 372, 384 (Conn. 2000); Amos, 262 N.W.2d at 437. These courts reason that the trial court's ruling could not have influenced the defendant's decision to testify. Rantz, 862 F.2d at 813. If the defendant has decided to testify no matter what, the order of witnesses is less crucial. The rationale underlying Brooks -- allowing the defendant to make an informed decision regarding the need for and value of his testimony -- is not applicable in such situations. Brooks, 406 U.S. at 608-10.

The Circuit Court's findings render this case fundamentally distinct from Kido and Brooks.  Because Loher had decided to testify before the court's ruling, the choice was not effectively "foisted upon [him]."  Kido, 102 Hawai'i at 376, 76 P.3d at 619.  The trial court's ruling could not have influenced Loher's decision to testify, and thus no Brooks error occurred.

Loher also contends that the Circuit Court's findings on this issue are clearly erroneous because they directly contradict the statement of Loher's counsel at trial.  A finding is clearly erroneous if (1) the record lacks "substantial evidence" to support it, or (2) the appellate court is "left with a definite and firm conviction that a mistake has been made." Okumura, 78 Hawai'i at 392, 894 P.2d at 89.

The court's findings in this case were supported by substantial evidence.  At the Rule 40 hearing, Kugiya testified that "right from the beginning, [Loher] indicated to me that he was innocent, that he wanted to tell his story."  Kugiya believed Loher "always wanted to testify to give his version of events." Prior to trial, he consulted with Loher many times.  Loher "wanted to explain his claim how it occurred."  He said "from the beginning he wanted to testify" and never told Kugiya that he wanted to remain silent.  Kugiya clarified that although their preference was for Loher to testify last, his testimony was crucial to establishing the alibi defense.  A change in the order of testimony thus "[didn't] change things that much."  Finally, Kugiya affirmed that Loher "was going to take the stand no matter what."

These statements arguably conflict with Kugiya's assertion at trial that "depending on how it went with the other witnesses, we may not need to call [Loher]."  At the same time, however, they lend further support to the court's observation at trial that "defense counsel has also represented to the Court that his client is going to testify."  In any event, the Circuit

Court was entitled to weigh the credibility of witnesses, including Kugiya's testimony at the Rule 40 hearing. Eastman, 81 Hawaiʻi at 139, 913 P.2d at 65. Accordingly, we conclude that the Circuit Court did not err in finding that Loher's decision congealed before the trial court's mandate.

Loher also contends that the Circuit Court erred in concluding that the delay in trial was not "trifling." It appears, however, that the court avoided the delay of a substantial portion of the afternoon session of a relatively short trial. Loher's other witnesses could not have been secured through only a brief continuance; locating them would have required suspending nearly the entire afternoon session. Under the circumstances of this case, in particular that Loher's decision to testify had already congealed, and in light of the trial court's discretion in maintaining efficiency in and control over its proceedings, the Circuit Court did not err in concluding that the delay was not trifing.

Finally, Loher contends that the Circuit Court erred in finding that Loher "created the exigency" whereby the witnesses were not present to testify. Loher argues that the error of his trial counsel should not be imputed to him. In Kido, this court framed an exception to Brooks error where "the defendant himself created the exigency for taking his testimony first." 102 Hawaiʻi at 376, 76 P.3d at 619. However, in support of this exception, the court cited cases imputing defense counsel's failure to the defendant. Id. at 376 n.9, 76 P.3d at 619 n.9. Kido does not require that the defendant be personally responsible for the exigency. Other courts confronting Brooks error have likewise imputed defense counsel's failure to the defendant. See Harris, 202 F.3d at 174 (noting defense counsel's failure to subpoena witness); Turner, 751 A.2d at 383-84 (discussing defense counsel's failure to timely disclose alibi witness); Walden, 224 P.3d at 375.

17

Loher has not raised a claim of ineffective assistance of trial counsel for failing to have the defense witnesses ready. Nor does he challenge the Circuit Court's findings that (1) Kugiya made a mistake as to the timing of the State's case, and (2) there was no evidence that Kugiya ever consulted with the prosecutor as to the length of the State's case or the number of witnesses the State would actually call. The Circuit Court thus did not err in concluding that Loher occasioned the ruling through his defense counsel's failure to have the witnesses available.

In sum, the Circuit Court thus did not err in concluding there was no Brooks violation. Accordingly, Shintani's omission of the issue did not result in the "withdrawal or impairment of a potentially meritorious defense." Briones, 74 Haw. at 465-66, 848 P.2d at 977. The Circuit Court did not err in concluding that Shintani's omission of the "forced testimony" issue did not amount to ineffective assistance of appellate counsel.

V.   CONCLUSION

For these reasons, we affirm the Circuit Court's April 14, 2009 Order Denying Petition for Post-Conviction Relief.

DATED:   Honolulu, Hawai'i, May 31, 2011.

On the briefs:

Laura Yoshida
for Petitioner-Appellant

Brian R. Vincent
Deputy Prosecuting Attorney
for Respondent-Appellee

Randal I. Shintani, Pro Se
Prior Court-Appointed Counsel

Presiding Judge

Associate Judge

Associate Judge

18